**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **CHARTER SCHOOLS SOLUTIONS,** | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| **v.** | § | **CIVIL CASE NO. 3:18-cv-00061** |
| | § | |
| **GUIDEONE MUTUAL INSURANCE** | § | |
| **COMPANY,** | § | |
| | § | |
| **Defendant.** | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**TO THE JUDGE OF THIS HONORABLE COURT:**

This case is fundamentally about whether an insurer that claims the mantel of Christian virtue by insuring churches and non-profit institutions all over the country can shirk its obligations to pay for losses incurred during a hailstorm by suggesting that coverage lapsed, and then suggesting that somehow Plaintiff lacks standing, despite a Bankruptcy Court's validly issued Order stating that Plaintiff is entitled to collect the moneys.

This overtly *un*charitable stance leaves poor and underserved children—who have it hard enough as it is—facing the prospect of going to school under poor conditions that should not be made worse by GuideOne's intransigency.

Plaintiff Charter School Solutions brings this action against GuideOne Insurance Inc. for failing to pay a valid and covered claim, and seeks damages, attorneys' fees and costs for breach of contract, breach of the duty of good faith and fair dealing, violations of the Texas Insurance Code, and violations of the Texas Deceptive Trade Practices Act.

## I.

## PARTIES

1.      Charter School Solutions ("CSS", "Plaintiff", or "Insured"), is a non-profit organization incorporated under the Texas Non-Profit Act, organized exclusively for charitable, scientific, literary and educational purposes within Section 501(c)(3) of the Internal Revenue Code. Specifically, the purpose of the corporation is for support of charter schools and educational organizations located in Arizona, Arkansas, Kansas, New Mexico, Mississippi, Missouri, Louisiana, Oklahoma, Tennessee and Texas.

2.      Defendant GuideOne Mutual Insurance Co., and its wholly-owned subsidiaries GuideOne Specialty Mutual Insurance Company, GuideOne America Insurance Company, GuideOne Elite Insurance Company, GuideOne National Insurance Company, and GuideOne Property & Casualty Insurance Company, (altogether "GuideOne," "Defendant" or "Insurer"), is an insurance company that is a citizen of the State of Iowa because its principal place of business is in Iowa and it is incorporated in the State of Iowa. GuideOne can be served via proper process at 1111 Ashworth Road, West Des Moines, IA 50265-3538, or through its registered agent, the Texas Insurance Commissioner, pursuant to TEX. INS. CODE § 804.103(c)(1)–(2) and TEX. INS. CODE § 804.201(a)(5), (b)(A)(1)–(2), via certified mail, including a $50 service fee. Service on the Commissioner counts as service on the Defendant.

## II.

## JURISDICTION AND VENUE

3.      Subject matter jurisdiction is proper under the diversity jurisdiction statute, 28 U.S.C. § 1332, because the parties are citizens of different states and the total amount in controversy, exclusive of interest and costs, is over $75,000.

4.      Personal jurisdiction is proper over any and all out-of-state Defendants pursuant to the Texas Long-Arm statute, Tex. Civ. Prac. Rem. Code § 17.001 *et seq*.

5.      This Court has specific personal jurisdiction over all Defendants based upon their having established the requisite minimum contacts with the State of Texas, contracting within the State of Texas, and directing intentional torts whose force and effect were felt in Texas, and because the subject property was located in this district and in the State of Texas.

6.      Venue is proper in the El Paso County under 28 U.S.C. § 1391 and TEX. CIV. PRAC. REM. CODE § 15.002 because substantially all events giving rise to the causes of action occurred in El Paso County, and the subject property is in El Paso County.

## III.

## FACTUAL BACKGROUND

### The Plaintiff is a Non-Profit Educational Institution for Underserved Children

7.      Charter School Solutions ("CSS"), in conjunction with Harmony Public Schools, is a non-profit educational institution which offers tuition-free education to low-income and poor children all over the country, and particularly in Texas.

8.      CSS is itself a non-profit 501c(3) institution.

9.      The educational mission is to (i) promote education by developing models, educational services, and products for the purposes of the Harmony Public Schools ("HPS") model; (ii) facilitate charter school campus development projects, including design, financing and leasing the developments; (iii) facilitate the attainment of higher education  by providing college tuition assistance in the form of scholarships and grants for charter school graduates; and (iv) foster and promote scientific advancement, and by conducting and overseeing the operation of S.T.E.M. education and science fairs, including the International Sustainable World (Energy, Engineering,

and Environment) Project (or S.W.E.E.P.) a collaborative and competitive international science fair event open to high school students from around the world with the goal of creating a more sustainable world.   The broadest discretion is vested in and conferred upon the Directors for the accomplishment of these purposes.

10.     Non-Party Harmony Public Schools ("HPS") leased the property at 9405 Betel Drive, El Paso, Texas 79907 (the "Property") from Iglesia Puerta Del Cielo, Inc. ("Iglesia"), a church, to use as a publicly funded charter school in 2006.

11.     The Property housed, and continues to house at any given time, approximately 700 students from low-income and poor neighborhoods who otherwise would not have access to quality education services.

**The Hailstorm**

12.     On or about October 20–21, 2015, a hailstorm (the "Hailstorm") hit El Paso and the location of the Property, with recorded hail stones of two inches or more in diameter. This was the largest recorded hail in the relevant period by a wide margin.

13.     The hail stones pierced the roof's gravel layer and the membrane underneath.

14.     The hail stones further damaged various canopy covers, machinery, HVAC units, and other rooftop equipment.

15.     Subsequent hail falls have not had the severity of the Hailstorm, however, and any new damage is readily distinguishable as damage that occurred during the Hailstorm.

16.     The Hailstorm damage was and is severe enough on its own to justify the loss claim for replacement of the roof and the accompanying equipment, machinery and canopies.

**CSS Owns the Claim**

17.    On December 2, 2016, Iglesia filed for bankruptcy (*In re: Iglesia Puerta Del Cielo, Inc*., Case No. 16-31943-RBK, U.S. Bankruptcy Court, Western District of Texas, El Paso Division).

18.    Among the debts was a note for over $8 million secured by a mortgage and deed of trust covering the Property.

19.    Plaintiff purchased the outstanding note and mortgage to the Property from the Property's lender, Evangelical Christian Credit Union ("ECCU") and then in turn used that to purchase the Property outright from the Bankruptcy Trustee. *See id.,* at Docket No. 57.

20.    The ECCU / Iglesia note further stated that its terms and obligations inured to the benefit of all successors and assigns of the noteholder, ECCU.

21.    At all relevant times, Iglesia had an insurance agreement with Defendant, Policy No. 1411-395, that covered damage to the Property (the "Policy").

22.    Nothing in the Policy states that only Iglesia may make a claim on the Policy for damage to the Property, or that the rights thereunder are unassignable.

23.    ECCU, as the note holder, was a named insured on all relevant Property insurance contracts with Iglesia.

24.    CSS's purchase of the note and mortgage thus made it the successor in interest to ECCU on all insurance claims and rights previously held by ECCU.

25.    Iglesia and CSS further entered into an Assignment of Insurance Claims and Proceeds agreement wherein Iglesia assigned all rights and title to any insurance proceeds to CSS under any insurance agreements.

26.    CSS filed a motion with the Bankruptcy Court seeking to clarify whether it, or Iglesia, was the proper owner of any insurance claims.

27.    The Bankruptcy Court considered the contracts and assignments in, inter alia, the Sale Order and Purchase Agreement, which expressly stated that CSS was the proper and rightful owner of any insurance claim or insurance proceeds once owned by Iglesia.

28.    The Bankruptcy Court confirmed CSS's right, title and interest to any insurance claims and proceeds via an Order dated August 7, 2017, which specifically ordered that:

---

16-31943-rbk  Doc#97  Filed 08/07/17  Entered 08/07/17 11:28:35  Main Document Pg 2 of 3

appropriate under the particular circumstances, that no other or further notice be provided; and after due deliberation and consideration of any objections to the Motion and the arguments of the parties made at the hearing on the Motion, and sufficient cause appearing therefore, it is hereby

**ORDERED** that the Motion is granted; and it is further

**ORDERED** that pursuant to the Sale Order and Purchase Agreement, CSS is the rightful holder of claims under and beneficiary of proceeds from the Policy and is the proper party with which to address any claims under the Policy; and it is

**ORDERED** that GuideOne Insurance is directed to address any claims under the Policy and pay any proceeds resulting from any claims to CSS.

**ORDERED** that notwithstanding any stay of orders contained in the Bankruptcy Code or Bankruptcy Rules, this order shall become enforceable immediately upon entry.

###

---

(the "Bankruptcy Court's Order").

29.    Thus, the Bankruptcy Court's Order makes clear that CSS is the proper counterparty to the insurance contract. That issue is now *res judicata*.

**The Claim is Filed and Denied**

30. The bankruptcy proceedings delayed Iglesia's filing of any proof of loss claim and stayed any proceedings by or against Iglesia.

31. On February 6, 2017, Iglesia filed a sworn proof of loss claim for hail damage ("hail damage"). The claim was assigned Claim No. AA083224 by Defendant.

32. On June 7, 2017, four months later, GuideOne denied the claim via letter from Mike Ellison.

33. In its denial of coverage, GuideOne contended that the hail damage had occurred during a hailstorm on November 4, 2016, when the policy had lapsed or had been cancelled.

34. Guideone did not mention any other reason for the denial of the claim.

35. GuideOne did not contend that <u>no</u> hail damage occurred during the Hailstorm of October 20-21, 2015.

36. GuideOne did not contend that there was no coverage during the October 2015 Hailstorm.

37. GuideOne did not contend that Plaintiff was not the proper insured.

38. On December 14, 2017, Plaintiff sent GuideOne a pre-suit demand letter, pursuant to the recently enacted Texas Insurance Code § 542A ("542A Letter").

39. On December 16, 2017, GuideOne responded by stating that CSS was not the insured and that GuideOne did not recognize CSS as the proper claimant.

40. On December 16, 2017, CSS responded with the Bankruptcy Court's Order showing that it indeed was the proper claimant.

41. GuideOne responded on the next day that it deemed the matter closed.

42. This matter was filed 61 days or more later.

## IV.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Breach of Contract**

43.     Plaintiff incorporates the foregoing factual allegations as if fully set forth herein, and further alleges that:

44.     Defendant entered into an insurance contract  (the "Contract") with Iglesia Puerta del Cielo Inc. for the Property located at 9405 Betel Drive, El Paso, Texas, that provided, among other things, coverage for hail damage to the Property.

45.     Plaintiff became an additional insured on the Contract by virtue of its purchase of the mortgage from Evangelical Christian Credit Union, who was a named additional insured on the Contract.

46.     Plaintiff was a successor in interest to the Contract by virtue of its purchase of the Property at the time and via an Assignment of Insurance Claims and Proceeds, and pursuant to the Bankruptcy Court's Order.

47.     Plaintiff was also a third-party beneficiary of the Contract.

48.     In October 2015, a Hailstorm hit El Paso and damaged the roof of the Property.

49.     The Contract premiums had been paid for the term, thus satisfying all performance obligations on behalf of the Insured.

50.     The loss was covered by the Contract and was within the policy limits.

51.     A duly filed proof of loss claim was filed with the Insurer.

52.     GuideOne denied coverage and has otherwise refused to pay the loss.

53.     Plaintiff has been damaged by the failure of the Defendant to pay the loss.

54.    Plaintiff is entitled to payment of the full amount of the claim as contract damages, as well as to court costs and attorneys' fees under TEX. CIV. PRAC. REM. CODE § 38.001 and under the Contract.

55.    This action was timely filed within four years of the accrual of the cause of action.

**SECOND CAUSE OF ACTION**
**Breach of the Duty of Good Faith and Fair Dealing**

56.    Plaintiff incorporates the foregoing factual allegations as if fully set forth herein, and further alleges that:

57.    Defendant entered into an insurance contract (the "Contract") with Iglesia Puerta del Cielo Inc. for the Property located at 9405 Betel Drive, El Paso, Texas, that provided, among other things, coverage for hail damage to the Property.

58.    Plaintiff became an additional insured on the Contract by virtue of its purchase of the mortgage from Evangelical Christian Credit Union, who was a named additional insured on the Contract.

59.    Plaintiff was a successor in interest to the Contract by virtue of its purchase of the Property at the time and via an Assignment of Insurance Claims and Proceeds, and pursuant to the Bankruptcy Court's Order.

60.    Plaintiff was also a third-party beneficiary of the Contract.

61.    In October 2015, a hailstorm hit El Paso and damaged the roof of the Property (the "hail damage").

62.    The Contract premiums had been paid for the term, thus satisfying all performance obligations on behalf of the Insured.

63.    The loss was covered by the Contract and was within the policy limits.

64.    Iglesia duly filed a proof of loss claim with the Insurer.

65.    Insurer denied coverage and has otherwise refused to provide coverage.

66.    Insurer has refused to pay the loss in bad faith.

67.    Defendant owed Plaintiff a duty of Good Faith and Fair Dealing. The common-law duty of good faith and fair dealing is separate and distinct from the Insurer's settlement duties involving good faith that arise under Texas Insurance Code Chapter 541.

68.    Liability was reasonably clear because the proof of loss specifically stated that the hail damage occurred during the policy period in 2015, whereas Defendant denied coverage in bad faith on the basis that the policy lapsed in 2016.

69.    Public records show that a major hailstorm—one with two-inch hail stones or larger—hit the location of the Property during the covered period.

70.    The proof of loss amply demonstrated that the damage incurred in 2015 was significant damage requiring repair.

71.    The insurer's investigation, if any, was done in bad faith.

72.    A good faith investigation would have revealed that the damage complained of occurred much earlier than the later reflected damage to the roof, which pierced the roof's plastic barrier.

73.    Insurer's failure to settle the claim in good faith proximately caused Plaintiff's damages because it resulted in a bad faith denial of the claim.

74.    Plaintiff has been damaged by the refusal of the Defendant to pay the loss because it has resulted in damage to the roof of the Property, cost the Plaintiff the loss, and caused diminution in the value of the Property.

75.    Because of Insurer's awareness that the loss occurred in 2015 during a covered period, Insurer's denial of the claim was malicious, intentional and /or grossly negligent.

76.     GuideOne Insurance's Financial Strength Rating was downgraded due to a material downturn in GuideOne's operating results during the first half of 2017, resulting in material losses in capitalization and substantial adverse reserve development relative to surplus.

77.     In the third quarter of 2017, the new senior management team at GuideOne executed measures to "remediate its poor reserves, results and performance." Upon information and belief, it intended to do this by denying catastrophic weather claims, such as this one, in an effort to generate greater reserves and surplus.

78.     Upon information and belief, this balance-sheet driven strategy lies at the core of GuideOne's bad faith.

79.     Insurer further committed bad faith by refusing to acknowledge Plaintiff as the proper claimant on the policy, as successor to UCCE and to Iglesia, as provided for in the Bankruptcy Court's Order.

80.     GuideOne Insurance is therefore liable for exemplary damages to the fullest extent allowed under Texas law.

81.     Insurer is further liable for interest, court costs, and attorneys' fees.

82.     This action for bad faith was filed within two years of the accrual of the action.

### THIRD CAUSE OF ACTION
### Violations of the Texas Insurance Code Chapter 541

83.     Plaintiff incorporates the foregoing factual allegations as if fully set forth herein, and further alleges that:

84.     Texas Insurance Code § 541.060(a)(2) states that "[i]t is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to engage in the following unfair settlement practices with respect to a claim by an insured or beneficiary: … (2)

failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of: (A) a claim with respect to which the insurer's liability has become reasonably clear[.]"

85.     Texas Insurance Code § 541.060(a)(3) provides that "failing to promptly provide to a policyholder a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or offer of a compromise settlement of a claim[.]"

86.     Texas Insurance Code § 542.003(a) provides that "[a]n insurer engaging in business in this state may not engage in an unfair claim settlement practice."

87.     Texas Insurance Code § 542.003(b) provides that "[a]ny of the following acts by an insurer constitutes unfair claim settlement practices: (1) knowingly misrepresenting to a claimant pertinent facts or policy provisions relating to coverage at issue; … (4) not attempting in good faith to effect a prompt, fair, and equitable settlement of a claim submitted in which liability has become reasonably clear; (5) compelling a policyholder to institute a suit to recover an amount due under a policy by offering substantially less than the amount ultimately recovered in a suit brought by the policyholder[.]"

88.     Each of these provisions has been violated by Defendant as set forth in the Complaint.

89.     Texas Insurance Code Chapter 541 provides a private cause of action for unfair or deceptive insurance practices when the above provisions have been violated. *Great Am. Ins. v. North Austin Mun. Util Dist. No. 1*, 908 S.W.2d 415, 420 (Tex.1995); *Marquis Acquisitions, Inc. v. Steadfast Ins*. Co., 409 S.W.3d 808, 815 (Tex.App.—Dallas 2013, no pet.).

90.     Plaintiff is a "person" with standing to sue under the Insurance Code. TEX. INS. CODE §541.002(2).

91.     Plaintiff is or was at all relevant times an insured or beneficiary of the Contract.

92.     Defendant has misrepresented to the claimant a pertinent fact or policy provision relating to the coverage at issue, inasmuch as Defendant has denied coverage on the basis that the policy was not in effect when the damage was incurred and, separately, by denying that Plaintiff is not the rightful claimant under the insurance policy.

93.     Defendant did not attempt in good faith to bring about the prompt, fair, and equitable settlement of the claim.

94.     Liability was reasonably clear because the proof of loss specifically stated that the hail damage occurred during the policy period in 2015, whereas Defendant denied coverage in bad faith on the basis that the policy lapsed in 2016 and that the damage was caused by a later storm, despite clear evidence to the contrary, and on the basis that Plaintiff is not the proper claimant under the policy.

95.     Public records show that a major hailstorm hit the location of the Property during the covered period.

96.     The proof of loss amply demonstrated that the damage incurred in 2015 was major damage requiring repair and not a mere patch-up.

97.     The insurer's investigation, if any, was done in bad faith.

98.     A good faith investigation would have revealed that the damage complained of occurred much earlier than the later reflected damage to the roof which pierced the roof's plastic barrier.

99.     Insurer's failure to settle the claim in good faith proximately caused Plaintiff's damages because it resulted in a bad faith denial of the claim, costing Plaintiff money and diminution in the value of the Property, as well as hardship to the school.

100.    Insurer also failed to give a reasonable explanation, based on the policy as it relates to the facts or applicable law, for the Insurer's denial of a claim or for the offer of a compromise settlement of a claim.

101.    Because of Insurer's awareness that the loss occurred in 2015 during a covered period, Insurer's denial of the claim on grounds that there was no coverage was malicious, intentional and /or grossly negligent.

102.    Defendant has wrongfully compelled Plaintiff to institute suit to recover under the policy, not even utilizing the 75-day period under Section 542A, by offering $0.

103.    This action was filed within two years of the accrual of the cause of action.

**FOURTH CAUSE OF ACTION**
**Violations of Texas Insurance Code Chapter 542**

104.    Plaintiff incorporates the foregoing factual allegations as if fully set forth herein, and further alleges that:

105.    An insurer is liable under Chapter 542 if the insurer does not timely pay a claim, wrongfully rejects a valid claim, or takes no action on a valid claim. TEX. INS. CODE §§542.057, 542.058.

106.    Chapter 542 establishes a maximum of 60 days to pay a valid claim after receiving all reasonably requested and required items from the claimant. TEX. INS. CODE § 542.058(a).

107.    If the insurer rejects a claim, and the rejection is later determined to be wrongful, the insurer will be liable for having delayed payment for more than 60 days. *Higginbotham v. State Farm Mut. Auto. Ins*., 103 F.3d 456, 461 (5th Cir.1997). This deadline is extended by 15 days where, as here, the claim is for a weather-related disaster. *See* TEX. INS. CODE § 542.059(b).

108.    An insurer must pay statutory penalties if it is ultimately found liable for the claim and (1) it rejected the claim or (2) it paid after the deadline under TEX. INS. CODE §542.058.

109.    In an action for violation of Chapter 542, the plaintiff can recover statutory damages of the amount of the claim, as well as attorneys' fees. TEX. INS. CODE §542.060(a).

110.    Defendant entered into an insurance contract (the "Contract") with Iglesia Puerta del Cielo Inc. for the Property located at 9405 Betel Drive, El Paso, Texas, that provided, among other things, coverage for hail damage to the Property.

111.    Plaintiff became an additional insured on the Contract by virtue of its purchase of the mortgage from Evangelical Christian Credit Union, who was a named additional insured on the Contract.

112.    Plaintiff was a successor in interest to the Contract by virtue of its purchase of the Property at the time and via an Assignment of Insurance Claims and Proceeds, and pursuant to the Bankruptcy Court's Order.

113.    Plaintiff was also a third-party beneficiary of the Contract.

114.    In October 2015, a hailstorm hit El Paso and damaged the roof of the Property (the "hail damage").

115.    The Contract premiums had been paid for the term, thus satisfying all performance obligations on behalf of the Insured.

116.    The loss was covered by the Contract and was within the policy limits.

117.    Iglesia timely filed a proof of loss claim with the Insurer.

118.    Insurer denied coverage and has otherwise refused to provide coverage or pay the loss.

119.    Defendant has refused to pay the loss. Defendant knew or should have known that its actions in handling Plaintiff's claim were in violation of the Texas Insurance Code.

120.    As such, Plaintiff is entitled to treble damages pursuant to TEX. INS. CODE § 541.152(b).

121.    Defendant owed Plaintiff a duty of good faith and fair dealing.

122.    The common-law duty of good faith and fair dealing is separate and distinct from the insurer's settlement duties involving good faith that arise under Texas Insurance Code Chapter 541.

123.    Liability was reasonably clear because the proof of loss specifically stated that the hail damage occurred during the policy period in 2015, whereas Defendant denied coverage in bad faith on the basis that the policy lapsed in 2016.

124.    Public records show that a major hailstorm hit the location of the Property during the covered period.

125.    The proof of loss amply demonstrated that the damage incurred in 2015 was major damage requiring repair and not a mere patch-up.

126.    The insurer's investigation, if any, was done in bad faith.

127.    A good faith investigation would have revealed that the damage complained of occurred much earlier than the later reflected damage to the roof which pierced the roof's plastic barrier.

128.    Insurer's failure to settle the claim in good faith proximately caused Plaintiff's damages because it resulted in a bad faith denial of the claim.

129.    Plaintiff has been damaged by the refusal of the Defendant to pay the loss because it has resulted in damage to the roof of the Property, cost the Plaintiff the loss, and caused diminution in the value of the Property.

130.    Because of Insurer's awareness that the loss occurred in 2015 during a covered period, Insurer's denial of the claim on grounds that there was no coverage was malicious, intentional and /or grossly negligent.

131.    Insurer is thus liable for exemplary damages to the fullest extent allowed under Texas law.

132.    This action was filed within two years of the accrual of the cause of action.

## FIFTH CAUSE OF ACTION
### Violations of the Texas Deceptive Trade Practices Act ("DTPA")

133.    Plaintiff incorporates the foregoing factual allegations as if fully set forth herein, and further alleges that:

134.    Plaintiff was a consumer to the extent that consumer status was required under the Texas DTPA.

135.    Defendant is liable under the DTPA because Defendant's acts or practices violated Texas Business & Commerce Code §17.46(b) via its violations of TEX. INS. CODE § 541.151(2).

136.    Defendant has also engaged in deceptive trade practices, as defined by § 17.46(b) of the DTPA, by, among other things:

- Representing that the Contract "confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law" by assuming that the Contract allowed it to deny coverage for covered claims and to deny Plaintiff standing despite a court order to the contrary; and
- Knowingly making false or misleading statements of fact concerning the need for repair to the Property by denying coverage.

137.    Plaintiff brings suit under the DTPA because Defendant's actions are unconscionable and for violations, as stated above and incorporated herein by reference, of Chapter 541 of the Insurance Code.

138.    Because of Defendant's awareness that the Bankruptcy Court's Order conferred on the Plaintiff the rights under the policy, and because of Defendant's awareness that the claimed loss occurred during the Hailstorm in 2015, a covered period, Insurer's denial of the claim on grounds that there was no coverage for Plaintiff was malicious, intentional and /or grossly negligent.

139.    Plaintiff seeks economic damages, including the amount of loss, plus treble damages, attorneys' fees, court costs, pre-judgment interest, and all other legal and equitable relief to which Plaintiff is justly entitled.

140.    This action was filed within two years of the accrual of the cause of action under the DTPA.

## V.

## CONDITIONS PRECEDENT

141.    All necessary conditions precedent have been satisfied.

142.    Iglesia timely filed a sworn proof of claim with the Insurer, which the Insurer denied in bad faith more than 60 days after the claim was filed.

143.    On December 14, 2017, Plaintiff sent GuideOne a pre-suit demand letter, pursuant to the recently enacted Texas Insurance Code § 542A ("542A Letter").

144.    A copy of the 542A Letter was simultaneously sent to Charter School Solutions' governing body.

145.    On December 16, 2017, GuideOne responded to the 542A Letter stating that it did not recognize Plaintiff as the proper insured, that its insured was Iglesia, and thus declined to pay the claim irrespective of the Bankruptcy Court's Order.

146.   This matter was filed more than 61-days after the 542A Letter was sent, thus satisfying the statutory notice prerequisite.

## VI.

## WAIVER & ESTOPPEL

147.   Defendant has waived and is estopped from asserting any coverage defenses, conditions, exclusions, or exceptions to coverage not expressly set forth in any reservation of rights letter or other communication to Plaintiff denying coverage.

## VII.

## JURY DEMAND

148.   Plaintiff asserts its right to a trial by jury under Texas Constitution Article 1, Section 15, on all claims triable to a jury.

## VIII.

## PRAYER FOR RELIEF

149.   All conditions precedent to bringing this action have been satisfied.

150.   Plaintiff respectfully requests that judgment be entered in Plaintiff's favor and against Defendant for:

     a.   Damages;

     b.   Treble damages;

     c.   Exemplary damages;

     d.   Attorneys' fees;

     e.   Pre-judgment interest and post-judgment interest;

     f.   Court costs and expenses; and

     g.   All other legal and equitable relief to which Plaintiff is justly and legally entitled.

**Respectfully submitted this 19th day of February, 2018.**

**LAW OFFICES OF JOE SPENCER**

*/s/ Joe A. Spencer, Jr.*
Joe A. Spencer Jr.
TX Bar No. 18921800
1009 Montana Ave
El Paso, TX 79902-5411
T:  915-532-5562
F:  915-532-7535
joe@joespencerlaw.com


**SBAITI & COMPANY PLLC**

*/s/ Kevin N. Colquitt*
Mazin A. Sbaiti
TX Bar No. 24058096
(admission to WDTX pending)
Kevin N. Colquitt
TX Bar No. 24072047
1201 Elm Street – Suite 4010
Dallas, TX  75270
T:  214-432-2899
F:  214-853-4367
MAS@sbaitilaw.com
KNC@SbaitiLaw.com

*Counsel for Plaintiff*